# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00729-CR

**Teddy Mac Jones, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
## NO. 2C02-04553, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, appellant Teddy Mac Jones was convicted of assault with bodily injury on a family member. *See* Tex. Pen. Code Ann. § 22.01 (West 2003). He contends the evidence is insufficient to support his conviction and to disprove his claim of self-defense. We will affirm the conviction.

## FACTUAL BACKGROUND

Bell County Sheriff's Deputy Ingram testified that on the afternoon of May 26, 2002, he responded to the home appellant shared with his wife, the complainant. The complainant told Ingram that she and appellant had argued and wrestled for the phone, that "her hand may have slipped and she may have hit him in the head" while they fought for the phone, and that appellant had slapped her and grabbed her by the cheeks, shaking her head around. Ingram said there were red

marks on one of her cheeks and one of her ears, her finger was swollen, and she was upset and crying. Ingram tried to talk to appellant, who was uncooperative. Ingram did not see any visible injuries on appellant, but he did not check appellant's head for injuries.

Deputy Sheriff Moose, another officer at the scene, testified that appellant told him that he had hit the complainant, but only in self-defense after she struck him first. Moose did not see any injuries on appellant, nor did appellant complain or point out where he had been hit. Moose testified that appellant did not tell him that the complainant had struck him with the phone, otherwise injured him in the face or head, or kicked him in the groin. Although Moose said appellant had stated he had been struck first, Moose also testified that appellant did not "indicate anything . . . that would mean that [the complainant] had assaulted him in any way." The complainant told Moose that she and appellant argued, she tried to call 911, and he tried to take the phone from her. During the struggle, her hand slipped and "she might have hit him on the top of the head." Moose said the complainant was very upset, her finger was swollen from when appellant pulled the phone away, she had red marks on her cheek "indicative of something slapping across the face," and she had red finger marks around her jaw that she said were caused by appellant "grabbing her by the jaw and shaking her head around."

The complainant testified that on May 26, she and appellant started arguing and "[h]is temper just exploded." Appellant started yelling at the complainant and "got up in my face, just literally nose to nose, yelling as loud as he could." The complainant told appellant that perhaps they should consider divorce, and he replied, "I'll put you down so far that nobody ever finds you before I ever let you take my son from me." The argument progressed, and appellant twice grabbed her face

2

and squeezed it with his hand, shaking it slightly and saying he would slap her if she did not stop talking. The complainant moved away from appellant and picked up the phone to call 911. Appellant pulled the phone off the wall, and as they struggled for the phone, appellant "was thumped on his head with the phone receiver. The next thing I knew, . . . I was hit across the face, you know, and my ear." The complainant heard a loud pop in her ear when appellant slapped her. She found another phone and, after another struggle with appellant, spoke to a 911 dispatcher. Asked about appellant being hit on the head with the phone, the complainant said, "I don't think it was a hit. It was more of a thump because of the struggle that was happening. You know, my arm was up overhead, and so it was just part of the struggle." She denied using the phone as a weapon or striking appellant intentionally. The complainant said she did not seek medical care because she was embarrassed about being assaulted by her husband. The complainant denied that she had ever assaulted, kicked, or pushed appellant in the past.

Appellant testified that the complainant started yelling at him and calling him names and told him she was going to have him arrested. She picked up the phone, and he asked her not to call the police, reaching up and pulling the phone off the wall, disconnecting it. She then "came toward me with the receiver in her hand, and she hauled off and hit me right across the side of my face." Appellant testified that he then "tapped her on her cheek with the back of my hand," using "the least amount of force necessary to end the conflict." According to appellant, the complainant then attacked him, kicking him in the groin and slapping, hitting, and choking him. Appellant grabbed her chin with his hand to try to hold her off, and she pulled away, grabbed a second phone, and started throwing ceramic coasters at him. Appellant said he told Deputy Moose his version of

3

the events, including that he had been hit in the head, but neither deputy looked to see if he was injured. Appellant said the complainant had attacked him before, pushing him and injuring his arm.

## DISCUSSION

A defendant raising the issue of self-defense has the burden of producing evidence to support the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). The State then has the burden of persuasion to rebut the defense; the State does not have a burden of production of evidence. *Id.* A guilty verdict implicitly rejects a defendant's theory of self-defense. *Id.*; *Saxton*, 804 S.W.2d at 914. In evaluating the legal sufficiency of the evidence when a defendant claims self-defense, we view the evidence in the light most favorable to the prosecution and ask whether a rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the offense and (2) against the claim of self-defense. *Saxton*, 804 S.W.2d at 914. In reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and ask (1) whether the State's evidence, taken alone, is too weak to support the verdict and implicit rejection of a claim of self-defense, and (2) whether the evidence of guilt, although sufficient if taken alone, is against the great weight and preponderance of the evidence. *Zuliani*, 97 S.W.3d at 595. The trier of fact is the sole judge of the weight and credibility to be given a witness's testimony, *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000), and it is within the fact finder's province to accept or reject defensive evidence. *Saxton*, 804 S.W.2d at 914. The same standards of review are applied to verdicts reached following bench trials and jury verdicts. *Collins v. State*, 901 S.W.2d 503, 505 (Tex. App.—Waco 1994, pet. ref'd).

4

Here, there was conflicting evidence given by appellant and the complainant; the testimony given by the responding deputies largely confirmed the complainant's version of the events, not appellant's. Appellant points to inconsistencies between the complainant's testimony and that of a defensive witness regarding whether she attempted to get appellant's bail revoked by making a false report that he intended to flee to Mexico. However, it was for the trial court, as trier of fact, to evaluate the credibility of the witnesses and resolve conflicts in the evidence. *Johnson*, 23 S.W.3d at 7; *Saxton*, 804 S.W.2d at 914.

Further, the complainant testified that she did not intentionally strike appellant with the telephone receiver but that he might have been "thumped" with it as he struggled with her and raised her hands above her head to take it away. She also testified that he initiated the incident, threatening her and squeezing her face hard enough to leave marks and cause pain. When she picked up the phone to call 911, appellant pulled it off the wall and struggled to take it from her, slapping her hard after the phone struck him in the head. Appellant is not entitled to claim self-defense if he initiated and escalated the confrontation. *See* Tex. Pen. Code Ann. § 9.31(b)(4) (West 2003) (defendant may not claim self-defense if he provoked another's use of unlawful force unless he abandons or attempts to abandon encounter and other person still attempts to use force against him); *Smith v. State*, 965 S.W.2d 509, 512-13 (Tex. Crim. App. 1998) (defendant may not claim self-defense if he provokes attack seeking excuse to injure other party).

Appellant raised some evidence on the issue of self-defense, and the State then bore the burden of persuading the trial court that appellant had not acted in self defense; the State was not obligated to produce evidence disproving appellant's claim. *Zuliani*, 97 S.W.3d at 594. We will not

5

second-guess the trial court's determination of witness credibility or its resolution of evidentiary conflicts. *Johnson*, 23 S.W.3d at 7; *Saxton*, 804 S.W.2d at 914. We hold that the State's evidence, both viewed in the light most favorable to the trial court's judgment and viewed neutrally, is sufficient to support findings that (1) appellant assaulted the complainant, and (2) appellant did not act in self-defense. We overrule appellant's sole issue on appeal and affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:  July 24, 2003

Do Not Publish